# United States Bankruptcy Appellate Panel

### For the Eighth Circuit

_____

No. 18-6004

_____

In re: Barbara A. Wigley

*Debtor*

------------------------------

Lariat Companies, Inc.

*Creditor - Appellant*

v.

Barbara A. Wigley

*Debtor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: September 21, 2018
Filed: November 9, 2018

_____

Before SCHERMER, NAIL, and SHODEEN, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Lariat Companies, Inc. ("Lariat") appeals the February 9, 2018 order of the bankruptcy court allowing its claim against Debtor Barbara A. Wigley ("Debtor") in the reduced amount of $308,805.00. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). We vacate and remand.

BACKGROUND

This case comes to us following a decade of litigation between and among Lariat, Debtor, and Debtor's spouse that has generated–by our count–three lawsuits, four bankruptcy cases, and twelve appeals.

In 2008, Lariat, as lessor, and Baja Sol Cantina EP, LLC ("Baja Sol"), as lessee, entered into a ten-year lease of commercial real property in Hennepin County, Minnesota. Debtor's spouse, who had formed Baja Sol to operate a restaurant on the premises, personally guaranteed Baja Sol's performance under the lease.

Baja Sol defaulted under the lease, and Lariat evicted it in July 2010. Lariat then sued Baja Sol and Debtor's spouse in state court to recover damages under the lease and the guaranty. The Hennepin County district court awarded Lariat $2,224,237.00 in damages, plus pre- and post-judgment interest and attorney fees ("the guaranty judgment"). Debtor's spouse appealed, and the Minnesota court of appeals affirmed the district court's judgment.

In November 2011, Lariat and two other creditors filed an involuntary chapter 7 petition against Debtor's spouse. On Debtor's spouse's motion and with the consent of the creditors, the bankruptcy court dismissed that case.

The day after they filed the involuntary chapter 7 petition, the same three creditors filed a lawsuit against Debtor in state court to avoid certain allegedly fraudulent transfers from Debtor's spouse to Debtor. After the involuntary petition was dismissed, they added Debtor's spouse as a co-defendant. The Hennepin County district court held Debtor and Debtor's spouse jointly and severally liable for the fraudulent transfers and awarded Lariat[1] $795,098.00, plus statutory interest, costs, and disbursements ("the fraudulent transfer judgment").

In March 2013, Debtor's spouse filed a lawsuit against Lariat in state court. Finding it mirrored an earlier unsuccessful attempt by Debtor's spouse to vacate the guaranty judgment, the Hennepin County district court concluded the lawsuit was barred by collateral estoppel and dismissed the complaint. Debtor's spouse's subsequent appeal to the Minnesota court of appeals is still pending.

In January 2014, Baja Sol filed a petition for relief under chapter 11. On the United States Trustee's motion, the bankruptcy court dismissed that case.

In February 2014, Debtor's spouse filed his own petition for relief under chapter 11. Lariat filed a proof of claim for $1,734,539.00, comprising $227,087.00 for unpaid rent, common area maintenance, and late fees, $379,111.00 for future rents, $185,829.00 for attorney fees, $123,750.00 for unrecovered amortized obligations, and $816,761.00 for the fraudulent transfer judgment. Debtor's spouse objected to Lariat's claim, and following an appeal from the bankruptcy court's initial determination that Lariat's claim should be capped at $445,272.93 under

---

[1]The other two creditors had settled their claims.

11 U.S.C. § 502(b)(6),[2] the bankruptcy court determined Lariat's claim should instead be capped at $553,271.00 under that section.

In February 2016, over Lariat's and Debtor's objections, the bankruptcy court confirmed Debtor's spouse's plan of reorganization.[3]  Both Lariat and Debtor appealed, and in separate opinions, we affirmed the bankruptcy court's decision and dismissed Debtor's appeal for lack of standing.  Debtor again appealed, and the Eighth Circuit court of appeals dismissed her appeal for the same reason.

In August 2016, Debtor's spouse paid Lariat $637,581.07, representing the allowed amount of Lariat's claim against him, plus accrued interest. In September 2016, Debtor's spouse was granted a bankruptcy discharge.

---

[2]A lessor's claim for damages resulting from the termination of a lease of real property is capped at:

> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of–
>
> > (i) the date of the filing of the petition; and
> >
> > (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates[.]

11 U.S.C. § 502(b)(6).

[3]Lariat objected only to preserve its right to appeal the bankruptcy court's earlier interlocutory order denying Lariat's motion to dismiss or convert to chapter 7 Debtor's spouse's bankruptcy case.

Around the same time, Debtor and Debtor's spouse asked the state court to vacate the fraudulent transfer judgment. The Hennepin County district court denied their motion to vacate, but amended its findings of fact to correct an overvaluing of a checking account by $13,814.94, thereby reducing the amount of the fraudulent transfer judgment to $788,487.78. Debtor's subsequent appeal to the Minnesota court of appeals is still pending.

In December 2016, Debtor filed a petition for relief under chapter 11. Lariat filed a proof of claim for $1,030,916.74, comprising $788,487.78 for the amended fraudulent transfer judgment and $242,428.96 for interest thereon to the date Debtor filed her petition. Debtor objected, arguing Lariat's claim should be disallowed, because Debtor's spouse had satisfied Debtor's obligations to Lariat in his bankruptcy, leaving nothing for Lariat to collect from Debtor. Both parties moved for summary judgment. The bankruptcy court denied Debtor's motion and granted Lariat's motion in part, holding the bankruptcy court's application of § 502(b)(6) in Debtor's spouse's bankruptcy did not eliminate Lariat's claim in Debtor's bankruptcy.

Following a final hearing, the bankruptcy court entered its written decision, in which it concluded, in pertinent part:

> 1. [Debtor's spouse's] use of 11 U.S.C. § 502(b)(6) in his bankruptcy does not benefit the Debtor so as to preclude any claim by Lariat. Lariat's claim has not been satisfied.
>
> 2. Lariat is not entitled to the full amount of its claim. Section 502(b)(6) of the Bankruptcy Code caps the allowed amount of Lariat's claim.

Unhappy with the bankruptcy court's second holding, Lariat timely appealed, and unhappy with the bankruptcy court's first holding, Debtor timely cross-appealed.

## STANDARD OF REVIEW

The relevant facts are undisputed. We review *de novo* the bankruptcy court's conclusions of law. *Pierce v. Collection Assocs., Inc.* (*In re Pierce*), 779 F.3d 814, 817 (8th Cir. 2015). The issues presented appear to be matters of first impression.

## DISCUSSION

A bankruptcy court may not allow a claim that is unenforceable against the debtor, unless the claim is only unenforceable because it is contingent or unmatured. 11 U.S.C. § 502(b)(1). With respect to the bankruptcy court's first holding, Debtor argues Lariat's claim against Debtor's spouse has been paid in full and is therefore unenforceable against Debtor. We agree.

The bankruptcy court correctly noted Debtor's liability to Lariat arises under the Minnesota Uniform Fraudulent Transfer Act, MINN. STAT. §§ 513.41-513.51.[4] And Debtor's liability to Lariat arises *only* under those provisions: Debtor was neither a party to the lease between Lariat and Baja Sol nor a guarantor of Baja Sol's performance under the lease.

However, as we held in Lariat's appeal from the bankruptcy court's initial determination that Lariat's claim against Debtor's spouse should be capped at $445,272.93, MINN. STAT. §§ 513.41-513.51 do not create a "new" claim. *Lariat Cos., Inc. v. Wigley* (*In re Wigley*), 533 B.R. 267, 272-73 (B.A.P. 8th Cir. 2015). A predicate claim is required.

---

[4]On August 1, 2015, the name of this act was changed to the Minnesota Uniform Voidable Transactions Act, and many of its provisions were amended. 2015 Minn. Sess. Laws Serv. Ch. 17 (S.F. 1816) (West).

> The Minnesota Uniform Fraudulent Transfer Act is not substantive in nature, but instead *merely confers an alternate remedy for protecting preexisting creditor rights*. The creditor rights a party seeks to enforce must exist under independent law, such as contract law. The purpose of the statute is to grant creditors additional enforcement possibilities when a debtor transfers his assets to a third party.

*Deford v. Soo Line R. Co.*, 867 F.2d 1080, 1087 (8th Cir. 1989) (citations omitted) (emphasis added).

Lariat's predicate claim was the guaranty judgment. But for MINN. STAT. §§ 513.41-513.51, it would have had no claim against Debtor. Lariat's preexisting creditor rights were thus those that led to and flowed from the guaranty judgment, primarily–if not exclusively–the right to collect on that judgment. Those creditor rights are the only creditor rights protected by the alternate remedy conferred by MINN. STAT. §§ 513.41-513.51. And those creditor rights have been extinguished.

The bankruptcy court ultimately capped Debtor's spouse's liability under the guaranty judgment at $553,271.00. Debtor's spouse has paid Lariat that amount, plus interest. Lariat's predicate claim has thus been satisfied: Lariat cannot recover any additional amount from Debtor's spouse. That being so, there are no preexisting creditor rights left for MINN. STAT. §§ 513.41-513.51 to protect in this case. Consequently, Lariat no longer has a claim against Debtor.

This conclusion is entirely in keeping with both the language and the spirit of MINN. STAT. §§ 513.41-513.51, which limit a creditor's recovery to "the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, *whichever is less*." MINN. STAT. § 513.48(b)(1) (emphasis added). If Lariat were allowed to

recover *any* amount from Debtor, Lariat's recovery under the guaranty judgment would be more than the amount necessary to satisfy its predicate claim.[5]

## CONCLUSION

For the reasons stated, we vacate the bankruptcy court's February 9, 2018 order allowing Lariat's claim against Debtor in the reduced amount of $308,805.00 and remand for entry of an order disallowing Lariat's claim in its entirety.[6]

---

[5]At oral argument, Lariat's counsel conceded if, instead of filing bankruptcy, Debtor's spouse had paid Lariat the full amount it was owed under the guaranty judgment, Lariat would no longer be entitled to enforce the fraudulent transfer judgment against Debtor. Because the bankruptcy court capped the amount Lariat could recover under the guaranty judgment, and because Lariat has been paid that capped amount, the result here is the same.

[6]In light of our conclusion that Lariat no longer has a claim against Debtor, we do not reach the question of whether the bankruptcy court correctly concluded § 502(b)(6) capped the allowed amount of Lariat's claim against Debtor.